UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————

No. 25-CV-124 (RER)

————————————————

ANTHONY HOBSON

VERSUS

MARK MILLER, SUPERINTENDENT OF
THE GREEN HAVEN CORRECTIONAL FACILITY

————————————

**MEMORANDUM & ORDER**

————————————

**RAMÓN E. REYES, JR., District Judge:**

Before the Court is Anthony Hobson's ("Petitioner" or "Hobson") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1). Following a jury trial, Hobson was convicted of second-degree murder, tampering with physical evidence, and fourth-degree criminal possession of a weapon in connection with the fatal stabbing of his pregnant girlfriend. Hobson initially raised four grounds for relief, but after the Court denied his motion to hold the Petition in abeyance, he elected to proceed solely on his due-process challenge to the fairness of his trial. (ECF Nos. 11, 12). As detailed below, however, Petitioner's claims are unexhausted, procedurally defaulted, or fundamentally without merit. Accordingly, the Petition is denied in its entirety.

## BACKGROUND

I.      Factual Background

Petitioner Anthony Hobson and the decedent, Jennifer Irigoyen ("Irigoyen"), commenced a romantic relationship in late 2018. (ECF No. 1 at 3). By December 2018,

Irigoyen became pregnant with Petitioner's child, and the couple resolved to keep the baby despite ongoing relational difficulties. (*Id.* at 4). On the evening of February 2, 2019, following a text message exchange regarding the status of the pregnancy, Irigoyen invited Petitioner to her apartment located at 60-80 Myrtle Avenue in Queens, New York. (*Id.*) Petitioner arrived at approximately 11:00 p.m. and, upon observing cups of alcohol on the bedroom television stand, confronted Irigoyen regarding her drinking while pregnant. (*Id.*)

Petitioner represents that the verbal dispute escalated into a physical altercation. (*Id.*) According to Petitioner, Irigoyen struck and grabbed him, prompting him to slap her in retaliation. (*Id.*) Petitioner states that Irigoyen subsequently brandished a knife, allegedly flailing it toward Petitioner while declaring that she either intended to harm the unborn child or had already killed the baby. (*Id.*) A physical struggle for the weapon ensued, resulting in cuts to Petitioner's arms. (*Id.*) Petitioner contends that upon hearing his child was deceased, he "snapped" and lost control. (*Id.*) The altercation spilled out of the apartment and progressed through the third-floor hallway, down the stairwell, and ultimately into the first-floor vestibule of the building. (*Id.*) Emergency Medical Technician Siewharine Persad and his partner found her unconscious, with a stomach wound and no pulse, and attempted ventilation until paramedics arrived and intubated her; she was transported to Wyckoff Hospital, where she died at approximately 2:22 a.m. (*Id.* at 6).

II.     Procedural History

On January 25, 2022, following a jury trial in the Supreme Court of New York, Queens County, Hobson was convicted of Murder in the Second Degree, Tampering with Physical Evidence, and Criminal Possession of a Weapon in the Fourth Degree. (*Id.* at

2

2). The trial court later sentenced Petitioner to an indeterminate term of twenty-five years to life imprisonment for the murder conviction, to run consecutively with a term of one and one-third to four years for the tampering conviction, alongside a one-year sentence for the weapon possession conviction. (*Id.* at 3).

On October 5, 2022, Hobson, through counsel, appealed to the Appellate Division, Second Department. (*Id.* at 3). The Appellate Division affirmed Petitioner's conviction, holding that the jury's rejection of his extreme emotional disturbance defense "was not against the weight of the evidence," as the jury "reasonably concluded that the circumstances surrounding the commission of the crime were not indicative of a loss of self-control or similar mental infirmity." *People v. Hobson*, 220 A.D.3d 806, 807–08 (2d Dep't 2023). The court disposed of Petitioner's remaining claims—which included challenges to the sufficiency of the evidence for tampering, the trial court's refusal "to allow a defense expert to testify remotely," the jury charge on criminal possession of a weapon, the "handling of a certain jury note," and a "remark made by the prosecutor during summation"—by concluding that they were largely "unpreserved for appellate review" and, "in any event, [were] without merit." *Id.* at 808–09. The court explicitly "decline[d] to review" the unpreserved claims "pursuant to [its] interest of justice jurisdiction." *Id.*

Hobson later sought leave to appeal to the New York Court of Appeals, which the court denied on December 20, 2023. *See People v. Hobson*, 40 N.Y.3d 1080 (2023).

On January 8, 2025, Hobson filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254, asserting four grounds for relief: (1) ineffective assistance of trial

counsel under the Sixth Amendment; (2) denial of Fourteenth Amendment procedural due process arising from the trial court's procedural rulings; (3) denial of due process through police and prosecutorial misconduct; and (4) a free-standing claim of actual innocence. (ECF No. 1-2). Later, Hobson moved to hold the petition in abeyance so that he could return to state court to exhaust the first, third, and fourth grounds through a motion under N.Y. Criminal Procedure Law § 440.10. (ECF No. 5). The Court denied the stay on September 17, 2025. (ECF No. 11). Petitioner elected to delete Grounds One, Three, and Four and proceed solely on Ground Two. (ECF No. 12). The State answered the petition on November 24, 2025. (ECF Nos. 13, 14). Hobson replied on December 22, 2025. (ECF No. 19).

## LEGAL STANDARD

Federal habeas review of state court decisions is governed by the standard set forth in the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241–55. *Bell v. Ercole*, 631 F. Supp. 2d 406, 413–14 (S.D.N.Y. 2009). Under the AEDPA, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal habeas review does not reach claims of state-law error: "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," and "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (citation omitted). "[B]efore reaching the merits of a claim brought pursuant to 28 U.S.C. § 2254, a federal court must first

4

determine that its constitutional nature has been 'fairly presented' to the state courts." *Curtis v. Lacy*, No. 94-CV-5295 (JG), 1996 WL 1088930, at *2 (E.D.N.Y. Jan. 25, 1996) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Separately, a claim that a state court resolved on an independent and adequate state procedural ground, or that the petitioner may no longer raise in state court, is procedurally barred from federal review absent a showing of cause and prejudice or a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 729–30, 750 (1991).

## **DISCUSSION**

The petition asserts four grounds for relief, and Petitioner now recasts the second — his due-process challenge to the conduct of his trial — as a single, unified claim that the Court must treat as exhausted in the aggregate. (ECF No. 19 at 2–4). As a threshold matter, the Court declines to do so, and, as the state courts did, instead considers each component of that claim on its own terms. Following such an approach, the Court addresses each claim in turn.

I.      The Due-Process Claim Is Not Exhausted in the Aggregate

Petitioner contends that his federal due process claim is a single, unified challenge to the fairness of his trial, and that Respondent's opposition improperly seeks to "disaggregate [that] unified due process claim into discrete components" so as to recast some of them as "unexhausted or procedurally defaulted." (ECF No. 19 at 2). Petitioner argues that on direct appeal he pressed several errors bearing on the fairness of his trial: the preclusion of Dr. Baden's testimony in violation of the Sixth Amendment, an erroneous jury charge, an inflammatory summation, and the trial court's mishandling of a jury note.

5

(*Id.* at 2). Those claims, Petitioner maintains, "taken together, presented the state courts with the substance of [his] federal constitutional challenge to the fairness of his trial." (*Id.*) The Court is not persuaded.

The exhaustion requirement is not satisfied in the aggregate. To exhaust a claim, a petitioner must "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim," and must have "fairly presented to the state courts the 'substance' of his federal habeas corpus claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *see also Picard,* 404 U.S. at 275–78. "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson*, 459 U.S. at 6. The Second Circuit has applied these principles to the maneuver Petitioner attempts. *See Jimenez v. Walker*, 458 F.3d 130 (2d Cir. 2006). In *Jimenez v. Walker*, the petitioner sought to construct a single overarching claim out of the separate litigation of a *Brady* claim and an evidence-exclusion claim, joining them in his appellate brief with the transition phrase "was exacerbated by" and the plural noun "rulings." 458 F.3d at 149. The Circuit held that this did not fairly present any distinct claim, because such "isolated phrases do not give the state court fair notice of a distinct cumulative-error claim and simply serve as a transition and a summarization." *Id.*

Here, Petitioner presented no such unified claim to the state courts. On direct appeal he raised several discrete contentions, each directed to a distinct ruling or aspect of his trial, and the Appellate Division addressed each of them on its own terms rather than as a single, unified challenge to the overall fairness of the proceeding. *See Hobson*,

6

220 A.D.3d at 807–09. Furthermore, the Court finds that Petitioner's allegations that the State failed to disclose DNA testing and to timely produce photographs of the victim's apartment have never been presented to the state court.

The Court therefore declines to treat all allegations raised by Petitioner as a single, unified due-process claim and assesses the exhaustion of each component on its own terms.

## II.        The *Brady* Claim Regarding Undisclosed Evidence

Applying this claim-by-claim approach, the Court first addresses Petitioner's *Brady* allegations regarding undisclosed DNA testing and crime-scene photographs, finding them unexhausted.

Petitioner contends that evidence concerning undisclosed DNA testing and crime-scene photographs "arises from the same trial and supports the same theory of defense that Petitioner presented on appeal" and therefore does not fundamentally alter his exhausted due-process claim but merely supplements it. (ECF No. 19 at 5). He represents that he "discovered after sentencing that fingernail and fetal tissue samples had been sent for testing," and that "[o]n February 11, 2025, counsel contacted the Queens District Attorney to request the DNA test results, but the District Attorney refused to disclose them." (*Id.* at 4). That evidence, Petitioner argues, "relates to the same trial and the same struggle theory that Petitioner presented on direct appeal," namely "that the victim's wounds resulted from a struggle, supporting an extreme emotional distress defense." (*Id.* at 4–5). Petitioner further maintains that "[t]he common core of operative facts remains unchanged," and that he is "not raising a new or dissimilar claim" but is

instead "supplementing his exhausted due process claim with additional evidence that supports the same legal theory he presented to the state courts." (*Id.* at 5).

The Court disagrees.

A.  The *Brady* Claim is Unexhausted

"[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error.")

Exhaustion requires that the federal claim be "presented to the highest court of the pertinent state." *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990) (citing *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 190 (2d Cir. 1982)). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (citation omitted). "The claim presented to the state court, in other words, must be the 'substantial equivalent' of the claim raised in the federal habeas petition." *Jones v. Keane*, 329 F.3d 290, 294–95 (2d Cir. 2003) (citation omitted). "Even if a petitioner raises precisely the same legal claims in state and federal proceedings, reliance in the two proceedings upon different factual grounds that fundamentally alter the legal claim will foreclose a conclusion that the claim is exhausted." *McLean v. McGinnis*, 29 F. Supp. 2d

8

83, 90 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999) (citing *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)).

Here, Petitioner alleges that "[t]he prosecution failed to disclose material evidence that was favorable to the defense, in violation of *Brady v. Maryland*." (ECF No. 19 at 20). However, after reviewing the record, the Court finds that the Petitioner's *Brady* claim is not the "substantial equivalent" of anything Petitioner presented on direct appeal. *See Picard*, 404 U.S. at 278; *Jones*, 329 F.3d at 295. On Petitioner's direct appeal, he challenged the trial court's rulings and advanced his extreme-emotional-disturbance defense; none alleged that the prosecution had withheld exculpatory evidence. *See Hobson*, 220 A.D.3d 806. The Court therefore finds that the Petitioner's *Brady* claim has not been presented to state court. It is therefore unexhausted.

B.  The Claim Fails on the Merits

Even assuming the claim were properly before the Court, Petitioner could not establish a *Brady* claim. Under *Brady v. Maryland*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. 83, 87 (1963). "There are three components of a *Brady* violation: (a) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (b) such evidence must have been suppressed by the prosecution, either willfully or inadvertently; and (c) prejudice must have ensued." *Boyette v. Lefevre*, 246 F.3d 76, 89 (2d Cir. 2001) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

9

"When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility" may justify "a new trial 'irrespective of the good faith or bad faith of the prosecution.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citation omitted). But not every failure to disclose offends due process; the evidence must also be material. *See Shabazz v. Artuz*, 336 F.3d 154, 166–67 (2d Cir. 2003); *United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001). Evidence is material only where there is a "reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995); *see also United States v. Bagley*, 473 U.S. 667, 682 (1985).

Here, even crediting Petitioner's account, the DNA and photograph evidence could not have affected the outcome. While Petitioner argues that photographs of the apartment in disarray or DNA evidence would corroborate this "struggle theory", the overwhelming evidence defeats this claim. Surveillance video captured the victim fleeing from Petitioner into the hallway, at which point Petitioner struck her, pulled a knife from his pocket, and dragged her into a stairwell. (ECF No. 13 at 2). A neighbor ran into the stairwell, and saw Petitioner stab the victim repeatedly. (*Id.*) On this record, the Court finds no reasonable probability that disclosure of the evidence would have changed the result, and Petitioner accordingly cannot show the prejudice a *Brady* claim requires.

In sum, Petitioner's new-evidence claim is unexhausted. Even if the claim was properly presented, the Court is unconvinced that Petitioner could show that its disclosure would have made any difference to a verdict resting on his own admission and on video of the killing.

10

III.    The Weapon-Possession Jury Charge Claim

The Court next turns to Petitioner's jury charge claim, in which Petitioner contends that the trial court's jury charge on the weapon possession count omitted an essential element of the offense, violating Petitioner's right to due process. (ECF No. 19 at 11). The Court finds that it is procedurally defaulted because the Appellate Division rejected it on an independent and adequate state ground. It is also independently unexhausted and now barred because Petitioner abandoned it before the Court of Appeals. Even on the merits, any error in the charge was harmless.

A.    The Claim Is Procedurally Defaulted on State Grounds

A federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729 (citations omitted). Where a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice . . . , or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750. The Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011).

Here, Petitioner raised his challenge to the weapon-possession charge on direct appeal but conceded that it was unpreserved, asking that court to reach it in the interest of justice. The court declined, holding that "[t]he defendant's challenge to the Supreme

11

Court's charge on the elements of the offense of criminal possession of a weapon in the fourth degree is unpreserved for appellate review . . . , and we decline to review it pursuant to our interest of justice jurisdiction." *Hobson*, 220 A.D.3d at 808. That holding rests on an independent and adequate state ground and forecloses federal review. *See Downs*, 657 F.3d at 104.

Furthermore, Petitioner's theories do not establish an exception. To establish an exception for the procedural default, a petitioner must establish both cause and that he will be prejudiced if the court does not review the claim, or that a fundamental miscarriage of justice will result from non-review of the claim. *See Murray v. Carrier*, 477 U.S. 478, 492 (1986).

First, Petitioner contends that his trial counsel's failure to object was a cause for the default. (ECF No. 19 at 8–9). The Court disagrees. To show "cause," a petitioner must ordinarily point to some objective factor external to the defense that obstructed his attorney's compliance with the State's procedural requirements. *See Amadeo v. Zant*, 486 U.S. 214, 222 (1988); *Carrier*, 477 U.S. at 488. A petitioner can establish "cause" to excuse a procedural default by showing that counsel was ineffective in "failing properly to preserve the claim for review in state court." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Carrier,* 477 U.S. at 488–89). "However, an ineffective assistance of counsel claim must itself 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Petronio v. Walsh*, 736 F. Supp. 2d 640, 654 (E.D.N.Y. 2010) (citing *Carrier*, 477 U.S. at 489).

12

Here, the Court finds Hobson's ineffective assistance of counsel claim unexhausted. Petitioner did not raise any ineffective-assistance claim before the Appellate Division or the Court of Appeals. For example, in Petitioner's application for leave to the New York Court of Appeals, he advances his applications on only three issues: "(1) the prosecutor's purported summation misconduct; (2) the way the trial court handled the jury note; and (3) his constitutional claim related to the trial court's requirement that Dr. Baden testify in person." (ECF No. 13 at 11). Therefore, this theory is unexhausted and procedurally defaulted, and a defaulted ineffective-assistance claim cannot serve as cause to excuse the default of another.

Second, Petitioner argues that, alternatively, "the Court should reach the merits of Petitioner's claims to prevent a fundamental miscarriage of justice," because "the killing occurred during a struggle, supporting an extreme emotional distress defense." (ECF No. 19 at 9-10). The Court is not persuaded.

As for the "actual innocence ... gateway through" a procedural bar, the Supreme Court has "caution[ed] ... that tenable actual-innocence gateway pleas are rare." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). The Court has also clarified that "'actual innocence' means factual innocence, not mere legal insufficiency. In other words, the [g]overnment is not limited to the existing record to rebut any showing that petitioner might make." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citation omitted). "Only on a showing that 'in light of all the evidence' (including 'new evidence' proffered by the petitioner or the government), it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt, [may] a petitioner ... invoke the

13

actual innocence gateway and obtain review of the merits of his [procedurally defaulted] claims." *Williams v. United States*, No. 14-CR-784 (RJS), 2022 WL 903001, at *4 (S.D.N.Y. Mar. 28, 2022) (quoting *Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004)).

Petitioner fails to meet this exacting standard for several reasons. First, the proffered evidence—speculative DNA testing and Dr. Baden's excluded expert opinion regarding a "struggle"—is legally insufficient to establish actual innocence. Even accepted at face value, this evidence merely supports an extreme emotional disturbance (EED) defense. Under New York law, EED is a mitigating defense that reduces murder to manslaughter; it acknowledges the act of killing and does not render the defendant factually innocent of the underlying conduct. Evidence that merely mitigates culpability cannot pry open the actual-innocence gateway.

Second, the proffer is factually deficient. It is neither "new" nor "reliable." Dr. Baden was Petitioner's own expert whose testimony was actively considered and properly excluded by the trial court, not newly discovered. The supposedly exculpatory DNA evidence is entirely speculative; Petitioner concedes he does not possess any test results, arguing only that future testing might corroborate his theory. The gateway cannot be opened based on sheer conjecture about what undisclosed evidence might someday reveal.

Finally, Petitioner's attempt to use this specific evidence to overcome the procedural default of his jury-charge claim is fundamentally flawed. His defaulted jury-charge claim concerns the instruction on criminal possession of a weapon. (ECF No. 19 at 11). Evidence suggesting he was engaged in a physical struggle and acted under

14

emotional distress has absolutely no bearing on his factual innocence regarding the possession of a "dangerous instrument."

B. <u>The Claim Is Also Procedurally Barred for Failure to Exhaust</u>

"State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. "In New York, to invoke 'one complete round of the State's established appellate review process,' . . . a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal."  *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (citations omitted).

The Second Circuit applied these principles in *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).  There, the petitioner appealed his conviction to the Appellate Division on three claims, but his letter application to the Court of Appeals sought review of only one, attaching his Appellate Division brief without pressing the remaining two. *Id.* at 120. The Circuit held that the two omitted claims had not been fairly presented: "[t]he fair import of petitioner's submission . . . was that the other two had been abandoned," and a federal court would not presume that the Court of Appeals had "a duty to look for a needle in a paper haystack." *Id.* (quoting *Mele v. Fitchburg Dist. Ct.*, 850 F.2d 817, 822 (1st Cir. 1988)). Those claims were therefore unexhausted. Yet because the petitioner had already made the one leave application to which he was entitled and could no longer present the claims in state court, the court did not dismiss them; it held instead that they were

15

"deemed exhausted" but procedurally barred from federal review. *Id.* at 120–21; *see Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989).

Here, as in *Grey*, Petitioner raised the weapon-possession charge in the Appellate Division but pressed only three of his seven claims in his leave application, omitting the jury charge; the claim is thus unexhausted. No state avenue remains because he has used his one leave application. *See* 22 NYCRR 500.20(a). A record-based claim cannot be raised under N.Y. Crim. Proc. Law § 440.10, *see* § 440.10(2)(c)—it is deemed exhausted but procedurally barred.

C. Alternatively, Any Instructional Error Was Harmless

Even if the claim were not barred, the Court finds that it would still fail on the merits.

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam) (citation omitted). The Supreme Court has held that the "omission of an element" from a jury charge "is subject to harmless-error analysis." *Neder v. United States*, 527 U.S. 1, 15 (1999). "On collateral review of a state-court conviction, a trial error is generally to be considered harmless if it did not have a " 'substantial and injurious effect or influence in determining the jury's verdict.' " *Wray v. Johnson*, 202 F.3d 515, 525 (2d Cir. 2000) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Here, the asserted error comes nowhere near that standard.

"New York courts have held that an object 'need not be inherently dangerous' to qualify as a 'dangerous instrument'; instead, an object 'no matter how innocuous it may

16

appear to be when used for its legitimate purpose, becomes a dangerous instrument when it is used in a manner which renders it readily capable of causing serious physical injury.'" *Chan v. City of New York*, No. 19-CV-7239 (RPK) (SJB), 2023 WL 2734681, at *5 (E.D.N.Y. Mar. 31, 2023) (citing *People v. Carter*, 423 N.E.2d 30, 31–32 (N.Y. 1981)). The question turns on "the circumstances in which [the instrument] is used." N.Y. Penal Law § 10.00(13). Any innocuous object can qualify as a dangerous instrument so long as "under the circumstances in which it is used, attempted to be used or threatened to be used, [it] is readily capable of causing death or other serious physical injury." N.Y. Penal Law § 10.00(13); *People v. Warren*, 98 A.D.3d 634, 636 (2d Dep't 2012) (employing the "use-oriented approach" to identify dangerous instruments).

Here, the surveillance video showed Petitioner brandishing the knife at the victim as he dragged her into the stairwell, a neighbor witnessed him stabbing her, and the medical examiner testified that she died of knife wounds. The jury was required to find that Petitioner intended to use the knife unlawfully against another. A knife intended for unlawful use against a person, and in fact used to kill her, was readily capable of causing death or serious physical injury, and so was a dangerous instrument beyond any rational doubt, even on Petitioner's own account of the killing. Considered against the entire charge and the trial record, any omission was harmless: had the trial court given the instruction Petitioner now demands, the jury would have convicted all the same.

Accordingly, Petitioner's challenge to the weapon-possession charge provides no basis for habeas relief.

17

IV.        The In-Person Expert Testimony Requirement

Petitioner contends that the trial court violated his constitutional right to present a defense when it required his expert, the forensic pathologist Dr. Michael Baden, to testify in person rather than by two-way live video. (ECF No. 19 at 14). The Court finds that the claim is procedurally defaulted because the Appellate Division rejected it on an independent and adequate state ground. Even reviewed, the claim fails on the merits, because the in-person requirement is an ordinary state evidentiary ruling that contravenes no clearly established federal law. Furthermore, any error was harmless.

A. The Claim Is Procedurally Defaulted

First, the Appellate Division's denial of Petitioner's in-person testimony requirement serves as an independent and adequate state ground that renders Petitioner's claim procedurally defaulted.[1]

Petitioner responds that the rule is inadequate because it was exorbitantly applied: counsel, he says, repeatedly moved for a mistrial and objected on the record, so the refusal to reach the merits served no legitimate state interest. (ECF No. 19 at 6–8). The Court is not persuaded. The Supreme Court has recognized that there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground

---

[1] The Court notes that the Court of Appeals subsequently rejected Petitioner's application for leave. Such fact does not change the result. "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Because the Appellate Division issued the last reasoned decision and the Court of Appeals thereafter denied leave without explanation, the Court looks through that denial and presumes it rests on the same procedural ground. *Ylst*, 501 U.S. at 803. Given the Appellate Division's procedural disposition, the Court of Appeals' silent leave denial is best understood to rest on the same ground.

inadequate." *Lee v. Kemna*, 534 U.S. 362, 376 (2002); *see also Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003). "To preserve a question for appellate review, the objection must direct the trial court's attention to the contention that is to be raised on appeal." *United States v. Civelli*, 883 F.2d 191, 194 (2d Cir. 1989) (citing *United States v. Lanza*, 790 F.2d 1015, 1021 (2d Cir.), *cert. denied*, 479 U.S. 861 (1986)). Here, Petitioner's mistrial motions did not do so. Hobson's Counsel then moved for a mistrial, stating that "[w]e don't have the ability to defend our client wholly in this case without our medical doctor coming in." (ECF No. 13 at 6). The Appellate Division held that Petitioner's "contention that the Supreme Court deprived him of his constitutional right to present a defense by denying that branch of his motion which was to allow a defense expert to testify remotely is unpreserved for appellate review . . . , as he did not raise that contention at trial." *Hobson*, 220 A.D.3d at 808. Such a holding rests on New York's contemporaneous-objection rule. *See* N.Y. Crim. Proc. Law § 470.05(2). The Court finds that the rule's application was not exorbitant, and the state ground is adequate.

Furthermore, Petitioner cannot overcome this default. To establish an exception, he must show both cause and actual prejudice, or that a fundamental miscarriage of justice will result. *See Carrier*, 477 U.S. at 492. He has shown neither. New York requires a "case-specific finding of necessity" before excusing a personal appearance. *People v. Wrotten*, 14 N.Y.3d 33, 40 (2009). An ineffective-assistance claim can supply cause only if it was first exhausted as an independent claim in the state courts. *See Edwards*, 529 U.S. at 451–52. Petitioner never presented any such claim to any state court. It cannot serve as cause here. Because Petitioner shows no cause, the Court need not reach

19

prejudice. And the miscarriage-of-justice exception fails for the reasons given in Part III.A: the struggle-and-emotional-disturbance evidence on which he relies bears on the degree of his culpability, not his factual innocence. *See supra* Part III.A. The default stands.

### B.  The Ruling Does Not State a Cognizable Federal Claim

Were the default excused, the claim would still fail.

State evidentiary rulings rarely rise to the level of a federal constitutional violation. The Supreme Court has found the exclusion of defense evidence under a state evidentiary rule to violate the right to present a complete defense "only rarely," *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (per curiam), and only where the ruling is "so extremely unfair that its admission violates fundamental conceptions of justice," *Dowling v. United States*, 493 U.S. 342, 352 (1990); *accord Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012). The right guards against the arbitrary exclusion of a material witness, not against rules regulating the manner in which an available witness must appear. *See Washington v. Texas*, 388 U.S. 14, 23 (1967) (a State may not "arbitrarily" deny a defendant the right to put on the stand a witness "physically and mentally capable of testifying to events that he had personally observed"); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (an accused "must comply with established rules of procedure and evidence"). The law has long preferred live, in-person testimony. *See Maryland v. Craig*, 497 U.S. 836, 850 (1990).

Here, the trial court did not exclude Dr. Baden; it required him to testify in person and left the defense to produce him. New York itself permits remote testimony only on a "case-specific finding of necessity" and treats it as "an exceptional procedure to be used

20

only in exceptional circumstances." *Wrotten*, 14 N.Y.3d at 40. The trial court was entitled to require an adequate showing before excusing a personal appearance. *See People v. Towsley*, 85 A.D.3d 1549, 1550 (4th Dep't 2011). That ordinary evidentiary ruling states no cognizable federal claim, because "not every error of state law can be transmogrified by artful argumentation into a constitutional violation." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).

Petitioner's contrary submission invokes AEDPA's deferential standard, urging that the Appellate Division applied clearly established federal law. (ECF No. 19 at 17–18). However, that standard has no application here. This deference arises only as to "any claim that was adjudicated on the merits in State court proceedings." *Golb v. Att'y Gen. of the State of New York*, 870 F.3d 89, 97 (2d Cir. 2017) (quoting 28 U.S.C. § 2254(d)). Here, the Appellate Division did not reach the merits of this claim — it disposed of it on a procedural ground. *See supra* Part IV.A. The claim is barred for that reason, and on de novo review it fails because the in-person requirement worked no constitutional violation at all.

C.  Alternatively, Any Evidentiary Error Was Harmless

Even if the in-person requirement were error, it was harmless. Petitioner contends that Dr. Baden's "proposed testimony was critical to the defense," because he would have "testified that: (1) the victim's wounds were 'not typical of a murder' but of a 'struggle'; (2) the victim died from a neck wound; (3) the positioning of the victim during medical aid 'likely aggravated or accelerated her passing'; and (4) the defendant's own wounds were consistent with 'defensive wounds.'" (ECF No. 19 at 14–15). Petitioner argues that "this

21

testimony went to the heart of Petitioner's defense that the killing occurred during a struggle, supporting an extreme emotional distress defense." (*Id.* at 15).

The Court does not agree. Extreme emotional disturbance is an affirmative defense that reduces murder to manslaughter where the defendant acted "under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." N.Y. Penal Law § 125.25(1)(a). "The first, subjective element is met if there is evidence that defendant's conduct at the time of the incident was actually influenced by an extreme emotional disturbance." *Murden v. Artuz*, 497 F.3d 178, 194–95 (2d Cir. 2007) (citing *People v. Roche*, 98 N.Y.2d 70 (2002)). "The second is an objective element and requires proof that defendant's emotional disturbance was supported by a reasonable explanation or excuse." *Id.* Here, the Court finds Dr. Baden's testimony could not have aided the extreme emotional disturbance defense Petitioner advanced. Dr. Baden is a forensic pathologist, not a psychiatrist, and his proffered opinion—that the wounds were consistent with a struggle, that the victim's arm injuries were defensive, and that the medical aid she received "likely aggravated or accelerated her passing"—bore on the mechanics and cause of death, not on Petitioner's emotional state. (ECF No. 13 at 3). Because the extreme-emotional-disturbance defense depended on why Petitioner stabbed the victim, not on how her wounds were inflicted, none of that testimony was material to it. Accordingly, Petitioner's challenge to the in-person requirement provides no basis for habeas relief.

22

## CONCLUSION

For the foregoing reasons, the Petition is denied in its entirety. A certificate of appealability shall not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to enter judgment for Respondent, to close the case, and to mail a copy of this Memorandum and Order to Petitioner.

SO ORDERED.


 /s/ Ramón E. Reyes, Jr.

RAMÓN E. REYES, JR.
United States District Judge

Dated: July 7, 2026
        Brooklyn, New York